IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>VERIFONE SYSTEMS, INC.,<br><br>and<br><br>HYPERCOM CORPORATION,<br><br>Defendants. | Case: 1:11-cv-00887<br>Assigned to: Kessler, Gladys<br>Assign. Date: 5/12/2011<br>Description: Antitrust |

## ~~PROPOSED~~ FINAL JUDGMENT

WHEREAS, Plaintiff United States of America ("United States") filed its Amended Complaint on June 22, 2011, the United States and Defendants VeriFone Systems, Inc. and Hypercom Corp., by their respective attorneys, have consented to entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of the Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the Defendants, to assure that competition is not substantially lessened;

2

AND WHEREAS, the United States requires Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Amended Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I.   JURISDICTION

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Amended Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.   DEFINITIONS

As used in the Final Judgment:

A.   "Acquirer" means Gores or a buyer designated by a trustee to whom Defendants shall divest the Divestiture Assets.

B.   "Defendants" means VeriFone and Hypercom, as defined below, and any successor or assign to all or substantially all of the business or assets of VeriFone or Hypercom involved in the provision of Point of Sale Terminals.

C.  "Divestiture Assets" means Hypercom's entire business engaged in the development, production, distribution, and sale of POS Terminals in the United States, including, but not limited to:

1. All facilities used in the operation of Hypercom's United States POS Terminal business, including Hypercom's repair facility located in Delegacion Benito Juarex, Mexico.

2. All existing inventory of Hypercom's POS Terminal devices including parts.

3. All tangible assets used to operate the Divestiture Assets, including, but not limited to, all research and development activities; all manufacturing equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies and other tangible property; all licenses, permits and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, relating to the Divestiture Assets, including supply agreements and current POS Terminal certifications; all customer lists, customer contracts, accounts, and credit records; all repair and performance records and all other records relating to the Divestiture Assets.

4. Irrevocable, exclusive, transferable, fully paid, royalty free, non-sub licensable license to all patents and other intangible assets related to the development, production, distribution, and sale of POS Terminals in the United States, including, but not limited to, all licenses and

sublicenses, software and hardware intellectual property, copyrights, trademarks, trade names, service marks, service names, technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, all research data concerning historic and current research and development relating to the Divestiture Assets, quality assurance and control procedures, design tools and simulation capability, all manuals and technical information Defendants provide to their own employees, customers, suppliers, agents or licensees, and all research data concerning historic and current research and development efforts relating to the Divestiture Assets, including, but not limited to, designs of experiments, and the results of successful and unsuccessful designs and experiments.

5. In the event that a trustee is appointed, the trustee may, at the trustee's sole discretion, include any assets, including tangible assets as well as patents and other intangible assets that extend beyond the United States, if the trustee finds it necessary to enable the Acquirer to compete effectively in the POS Terminals Industry in the United States and accomplish the divestiture of Hypercom's POS Terminals business.

D.    "Gores" means The Gores Group, LLC., with headquarters in Los Angeles, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E.    "Hypercom" means Defendant Hypercom Corporation, a Delaware corporation, with headquarters in Scottsdale, Arizona, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

F.    "Point of Sale (POS) Terminals" means devices that enable retailers and other firms to accept a wide range of non-cash payment types, such as credit cards and debit cards. POS Terminals can operate on a standalone basis or be connected to an electronic cash register or similar device as part of an integrated point of sale system. Standalone POS Terminals are commonly referred to in the industry as "countertop" machines. Integrated POS Terminals are commonly referred to in the industry as "multi-lane" or "customer facing."

G.    "POS Terminals Industry" means the market for POS Terminals including countertop and integrated POS Terminals.

H.    "Transaction" means VeriFone's proposed merger with Hypercom.

I.    "VeriFone" means Defendant VeriFone Systems, Inc., a Delaware corporation, headquartered in San Jose, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

### III. APPLICABILITY

A. This Final Judgment applies to Defendants, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B. If, prior to complying with Section IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the acquirers of the assets divested pursuant to this Final Judgment.

### IV. DIVESTITURE

A. Defendants are ordered and directed, within twenty (20) calendar days after the Court signs the Hold Separate Stipulation and Order in this matter, to divest the Divestiture Assets to Gores in a manner consistent with this Final Judgment.

B. Defendants will not interfere with any negotiations by the Acquirer in connection with the transfer of the Divestiture Assets to employ any Hypercom employee who is agreed to by the Acquirer and Defendants to be an employee to be transferred in connection with the divestiture of the Divestiture Assets or as specified by a trustee. Interference with respect to this paragraph includes, but is not limited to, enforcement of non-compete clauses and offers to increase salary or other benefits apart from those offered company-wide. In addition, for each employee who elects employment by the Acquirer in connection with the divestiture of the Divestiture Assets, Defendants shall

vest all unvested pension and other equity rights of that employee and provide all benefits to which the employee would have been entitled if terminated without cause.

C. Defendants shall, as soon as possible, but within two business days after completion of the relevant event, notify the United States of: (1) the effective date of the Transaction and (2) the effective date of the sale of the Divestiture Assets to the Acquirer.

D. Defendants shall enter into a transitional support services agreement on customary and commercially reasonable terms and conditions for a period up to twelve (12) months from the execution date of the divestiture to enable the Acquirer to compete effectively in providing POS Terminals in the United States.

E. Defendants shall not take any action that will impede in any way the sales, operation, use or divestiture of the Divestiture Assets or the operation of the transitional support services agreement.

F. Unless the United States otherwise consents in writing to the divestiture pursuant to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, the divestiture shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion that the Divestiture Assets can and will be used by the Acquirer as part of a viable, ongoing business, engaged in providing POS Terminals in the United States. The divestiture shall be:

    1. made to an Acquirer that, in the United States's sole judgment has the intent and capability (including the necessary managerial,

8

shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

D. Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

E. The trustee shall serve at the cost and expense of Defendants, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Defendants and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

F. Defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, including any information provided to the United States during its investigation of the Transaction related to the business to be divested, and Defendants shall develop financial and other

    operational, technical and financial capability) of competing in the business of providing POS Terminals; and

  2. accomplished so as to satisfy the United States, in its sole discretion that none of the terms of the agreement between an Acquirer and Defendants give Defendants the ability to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

### V. APPOINTMENT OF TRUSTEE TO EFFECT DIVESTITURE

A. If Defendants have not divested the Divestiture Assets as specified in Section IV, Defendants shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to divest the Divestiture Assets in a manner consistent with this Final Judgment.

B. After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate.

C. Subject to Section V.E of this Final Judgment, the trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who

information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

  G. After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

  H. If the trustee has not accomplished the divestiture ordered under this Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it

shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

### VI. NOTICE OF PROPOSED DIVESTITURE

A. Within two (2) business days following execution of a definitive divestiture agreement the trustee shall notify the United States and Defendants of any proposed divestiture required by Section V of this Final Judgment. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets.

B. Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Acquirer(s), any other third party, or the trustee if applicable, additional information concerning the proposed divestiture, the proposed Acquirer(s), and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C. Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer(s), any third party, and the trustee, whichever is later, the United States shall provide written notice to Defendants and the trustee, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated,

subject only to Defendants' limited right to object to the sale under Section V.D of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section V shall not be consummated. Upon objection by defendants under Section V.D, a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. FINANCING

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII. HOLD SEPARATE

Until the divestiture required by this Final Judgment has been accomplished, Defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

## IX. AFFIDAVITS

A. Within twenty (20) calendar days of the filing of the Proposed Final Judgment in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or V, Defendants shall deliver to the United States an affidavit as to the fact and manner of its compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was

contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

      B.     Within twenty (20) calendar days of the filing of the Proposed Final Judgment in this matter, defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

      C.     Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## X.    COMPLIANCE INSPECTION

      A.     For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice Antitrust Division ("DOJ"), including consultants and other persons retained by the United States, shall, upon written

request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

  (1) access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

  (2) to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

 B. Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or respond to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

 C. No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.   If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI.   NO REACQUISITION

Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XII.   RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII.   EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

## XIV.   PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact

Statement, and any comments thereon and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: Nov. 21, 2011

                        Court approval subject to procedures of the Antitrust
                        Procedures and Penalties Act, 15 U.S.C. § 16.

                        *Gladys Kessler*
                        United States District Judge